EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Administración de Reglamentos y Permisos<br><br>Peticionario<br><br>vs.<br><br>Coordinadora Unitaria de Trabajadores del Estado<br><br>Recurrido | Certiorari<br><br>2005 TSPR 147<br><br>165 DPR _____ |

Número del Caso: CC-2003-319

Fecha: 19 de octubre de 2005

Tribunal de Circuito de Apelaciones:

        Circuito Regional de San Juan, Panel IV

Juez Ponente:

        Hon. Charles Cordero Peña

Abogados de la Parte Recurrida:

        Lcdo. Carlos Carrión Crespo
        Lcdo. Ricardo Santos Ortiz

Oficina del Procurador General de Puerto Rico:

        Lcda. Vannessa Ramírez
        Procuradora Genral Auxiliar


Materia: Revisión administrativa procedente de la Comisión de Relaciones del Trabajo del Servicio Público

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Reglamentos
y Permisos

    Peticionario

       vs.                    CC-2003-319     CERTIORARI

Coordinadora Unitaria de
Trabajadores del Estado

    Recurrido


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ

En San Juan, Puerto Rico, a 19 de octubre de 2005

El 7 de junio de 2001, la Coordinadora Unitaria de Trabajadores del Estado (C.U.T.E.) presentó ante la Comisión de Relaciones del Trabajo del Servicio Público de Puerto Rico (Comisión) una petición para representar a los empleados de la Administración de Reglamentos y Permisos (A.R.P.E.) para propósitos de la negociación colectiva. En virtud de lo anterior, la Comisión celebró una sesión especial, el 11 de julio de 2001, en la que participó tanto la C.U.T.E. como A.R.P.E.

Luego de celebrada la referida sesión, el 15 de febrero de 2002, la Comisión emitió una

resolución, sobre determinación de unidad apropiada, y ordenó la celebración de una elección para que los empleados de A.R.P.E. determinaran si deseaban ser representados por la C.U.T.E. para propósitos de la negociación colectiva.[1] Inconforme con una porción de la determinación, A.R.P.E. presentó, el 1 de marzo de 2002, una moción con sus excepciones[2], solicitando que fueran excluidos ciertos puestos de la unidad apropiada[3], por entender que éstos estaban íntimamente ligados a la gerencia.

En el entretanto, la elección se celebró el 26 de marzo de 2002. No obstante, la Comisión recusó los votos que emitieron los empleados que integraban los puestos que A.R.P.E. solicitó fueran excluidos, mientras se resolvía la moción con las excepciones. Luego de celebrada la elección, la Comisión certificó a la C.U.T.E. como el representante exclusivo de los integrantes de la unidad apropiada, el 17 de abril de 2002, debido a que el número

---

[1] En la referida resolución, la Comisión hizo determinaciones de hecho y conclusiones de Derecho sobre los puestos incluidos en la unidad apropiada. Ésta fue firmada por el Presidente de la Comisión.

[2] La referida moción fue presentada en virtud de la Sección 309(H) del Reglamento Núm. 6385 de la Comisión de Relaciones del Trabajo del Servicio Público de Puerto Rico que le permite a los participantes de la vista presentar sus excepciones a la determinación de unidad apropiada.

[3] Los puestos que A.R.P.E. solicitó fueran excluidos son: Analista en Recursos Humanos I al III, Ingeniero I y II, Oficial de Relaciones Públicas, Analista de Contabilidad III, Analista de Presupuesto II, Facilitador Administrativo II y Técnico de Oficina I y II.

de votos recusados <u>no</u> eran suficientes para afectar el resultado de la elección.

Así las cosas, A.R.P.E. presentó una moción suplementaria, el 22 de julio de 2002, en donde expuso argumentos adicionales sobre la doctrina de empleados íntimamente ligados a la gerencia, reiterando, de paso, su solicitud de exclusión de los puestos de la unidad apropiada que había presentado en la moción del 1 de marzo de 2002. La Comisión resolvió mantener en la unidad apropiada los puestos que A.R.P.E. solicitó fueran excluidos de ésta.[4]

Inconforme con la referida determinación, el 24 de septiembre de 2002, A.R.P.E. presentó ante el Tribunal de Apelaciones un recurso de revisión de decisión administrativa, señalando que erró la Comisión al mantener en la unidad apropiada los puestos que se le habían solicitado que fueran excluidos, en contravención a la doctrina de empleado íntimamente ligado a la gerencia, así como por tratarse de empleados gerenciales con responsabilidades de supervisión.

La Comisión presentó un escrito, titulado "Comparecencia Especial en Solicitud de Desestimación", en el que sostuvo que el foro apelativo intermedio no tenía jurisdicción para entender en la controversia planteada

---

[4] En esta resolución la Comisión también incluyó determinaciones de hechos y conclusiones de Derecho sobre los puestos en controversia. Ésta fue firmada por el Presidente de la Comisión.

debido a que la determinación de unidad apropiada no es una orden o resolución final, conforme a Ley de Procedimiento Administrativo Uniforme, y, además, porque la misma constituye un ejercicio de la función investigativa de la agencia que no está sujeta a revisión judicial. La Comisión argumentó que, utilizando por analogía la interpretación de la Ley de Relaciones del Trabajo, las determinaciones de unidad apropiada sólo son revisables por la vía colateral, como parte de una determinación de la Junta de Relaciones del Trabajo sobre práctica ilícita del trabajo.

A.R.P.E. presentó "Réplica a Comparecencia Especial en Solicitud de Desestimación", en la cual expresó que la Comisión no tenía "legitimación activa" para comparecer ante el Tribunal de Apelaciones ya que éste es un organismo cuasi-judicial que no es parte en el proceso; sostuvo, además, que la resolución de la Comisión es una revisable ya que la configuración de una unidad apropiada era determinante en el ejercicio de los derechos y obligaciones de los empleados y patronos en el marco de las relaciones laborales. Asimismo, indicó que el planteamiento era una cuestión novel a ser resuelta por el tribunal en cuanto a si bajo la Ley de Relaciones del Trabajo del Servicio Público se reconoce, al configurar una unidad apropiada, la doctrina de exclusión conocida como empleado íntimamente ligado a la gerencia.

El foro apelativo intermedio emitió una resolución <u>desestimando</u> el recurso de revisión de decisión administrativa por falta de jurisdicción, por entender que la determinación de unidad apropiada no es revisable por ser una decisión interlocutoria, y porque en este caso no se configuraban las circunstancias que le permiten dilucidar la controversia por vía de excepción. Fundamentó su determinación en que la determinación de unidad apropiada no es una acción administrativa que adjudique algún derecho u obligación, y además que no es una orden o resolución final ya que las partes tienen la oportunidad de presentar ante la Comisión una petición de clarificación de unidad apropiada. Finalmente, y utilizando por analogía la Ley de Relaciones del Trabajo, señaló que las determinaciones de unidad apropiada sólo son revisables por la vía colateral, como parte de una determinación de práctica ilícita.[5]

Inconforme con la referida determinación, A.R.P.E. acudió ante este Tribunal mediante petición de *certiorari* alegando, en síntesis y en lo pertinente, que erró el foro apelativo intermedio al declararse sin jurisdicción para revisar la determinación de unidad apropiada que hizo la Comisión de Relaciones del Trabajo del Servicio Público.

---

[5]    Oportunamente, A.R.P.E. presentó una moción de reconsideración, la cual fue declarada no ha lugar mediante resolución notificada el 1 de abril de 2003.

Expedimos el recurso y concedimos término a ambas partes para que se expresaran en torno a sus respectivas posiciones. La parte peticionaria compareció, no así la parte recurrida[6]. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

I

La Ley Núm. 45 de 25 de febrero de 1998, según enmendada,[7] 3 L.P.R.A. sec. 1451 et seq., conocida como "Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico", fue aprobada con el propósito de:

> "...conferirle a los empleados públicos en las agencias tradicionales del gobierno central, a quienes no aplica la Ley de Relaciones del Trabajo de Puerto Rico[8], el derecho a organizarse para negociar sus condiciones de trabajo dentro de los parámetros que se establecen en esta Ley. Estos parámetros se circunscriben a tres criterios esenciales, a saber: (i) acomodar, dentro de las realidades fiscales en que se desenvuelve el Gobierno, el costo correspondiente al mejoramiento de las condiciones de trabajo de los empleados públicos; (ii) evitar interrupciones en los servicios que prestan las agencias gubernamentales; y (iii) promover la productividad en el servicio público." Exposición de Motivos de la Ley Núm. 45 de 25 de febrero de 1998, Leyes de Puerto Rico, pág. 148.

---

[6] Mediante Resolución a esos efectos, el 30 de enero de 2004, le concedimos a la C.U.T.E. un término de treinta (30) días para presentar su alegato, apercibiéndole que de no recibirse el mismo dentro del término indicado, el caso quedaría sometido sin el beneficio de su comparecencia.

[7] El referido estatuto fue enmendado por la Ley Núm. 96 de 7 de agosto de 2001.

[8] Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. sec. 62 et seq.

A esos fines, la Ley Núm. 45, ante, le reconoció a los empleados de las agencias del gobierno central el derecho a organizarse y afiliarse en organizaciones sindicales de su elección. Véase: 3 L.P.R.A. sec. 1451b.[9] De esta manera, los empleados de las diferentes unidades apropiadas que deseen sindicalizarse podrán escoger, mediante voto mayoritario, la organización que habrá de representarles ante la agencia correspondiente. Véase: 3 L.P.R.A. sec. 1451g. La organización sindical que prevalezca en las elecciones, y que sea certificada como representante exclusivo de los empleados comprendidos en esa unida apropiada, tendrá la autoridad para negociar con la agencia correspondiente un convenio colectivo "en el que se discuten y acuerden disposiciones sobre salarios, beneficios marginales, términos y condiciones de empleo." 3 L.P.R.A. sec. 1451(j).

Con propósito de hacer cumplir sus disposiciones, la Ley Núm. 45 creó un organismo administrativo denominado "Comisión de Relaciones del Trabajo del Servicio Público", a quien le confirió facultades cuasi-legislativas y cuasi-judiciales, delimitadas en la ley. 3 L.P.R.A. sec. 1452t. La Comisión es la entidad encargada de "interpretar, aplicar y hacer cumplir las disposiciones de [la] Ley en todo lo relativo <u>a procesos de organización, certificación</u>

---

[9] Véase: <u>Asoc. de Maestros de P.R.</u> v. <u>Comisión de Relaciones del Trabajo</u>, res. 31 de marzo de 2003, 2003 T.S.P.R. 47; <u>Fed. de Maestros de P.R.</u> v. <u>Molina Torres</u>, res. 5 de noviembre de 2003, 2003 T.S.P.R. 159.

y decertificación de organizaciones sindicales, procedimientos relacionados con la conciliación y el arbitraje de negociaciones de convenios colectivos, procedimientos relacionados con prácticas ilícitas y en todos aquellos aspectos que la Ley le haya delegado alguna actuación en particular." 3 L.P.R.A. 1452t(a).

En lo que respecta a la controversia ante nuestra consideración, debemos señalar que esta pieza legislativa estableció el procedimiento a seguir en los procesos de organización y certificación de organizaciones sindicales para la negociación colectiva. Para ello, la Ley Núm. 45 establece que la Comisión es el organismo con la autoridad para determinar la composición de una unidad apropiada a los fines de negociación colectiva de aquellos empleados de las agencias del gobierno central para los cuales se solicite intervenir tomando en cuenta los criterios establecidos en el propio estatuto.[10] La Sección 4.5 de la Ley Núm. 45, 3 L.P.R.A. sec. 1451g, dispone que:

---

[10] La sección 4.3 de la Ley Núm. 45, 3 L.P.R.A. sec. 1451e, dispone:

La Comisión determinará las unidades apropiadas que existirán en las agencias, en consideración, entre otros, a los siguientes criterios:
(a) Comunidad de intereses entre empleados.
(b) Evitar el fraccionamiento excesivo de las unidades.
(c) Patrones actuales de organización formal e informal de los empleados.
(d) Protección del pleno disfrute de los derechos reconocidos en este capítulo.
(e) Viabilidad de las negociaciones.

**(Continúa . . .)**

Las organizaciones sindicales interesadas en ser certificadas como representantes exclusivos de una unidad apropiada para fines de la negociación colectiva someterán ante la Comisión prueba demostrativa de que un treinta por ciento (30%) del total de empleados de dicha unidad apropiada ha endosado una petición para que se lleve a cabo una votación para determinar si desean estar representados por una organización sindical.

Una vez la Comisión certifique la petición, la Comisión ordenará una votación entre los empleados de la unidad apropiada. Cualquier organización sindical que desee participar en esta votación deberá someter ante la Comisión el endoso de por los menos el veinte por ciento (20%) del total de empleados de la unidad apropiada.

La Comisión certificará como el representante exclusivo de los empleados aquella organización sindical que obtenga mediante votación secreta el apoyo de la mayoría del total de los empleados que participen en la elección.

Si ninguna de las organizaciones sindicales que participen en este elección obtuviere el voto de la mayoría del total de los empleados que participen en la elección, la Comisión realizará una elección final mediante votación secreta entre las dos organizaciones sindicales que hubieren obtenido el mayor número de votos y la que de éstas obtenga la mayoría de los votos, será certificada como el representante exclusivos de los empleados.

Conforme a la referida disposición estatutaria, la Comisión tendrá la autoridad de certificar, como representante exclusivo, a la organización sindical que los empleados públicos elijan mediante votación. A esos

---

(f) Similitud funcional en requerimiento o condiciones del trabajo.

(g) Sistema de personal establecido y planes de clasificación y retribución implantados en la agencia.

(h) Acuerdo entre las partes.

fines la propia Ley Núm. 45, ante, faculta a la Comisión "para aprobar un Reglamento para la elección del representante sindical en el que se establezcan los procedimientos a ser observados por las organizaciones obreras y los patronos." Sección 4.6 de la Ley Núm. 45, 3 L.P.R.A. sec. 1451h.

Con el objetivo de cumplir con las disposiciones de la Ley Núm. 45, ante, el 26 de enero de 2002 la Comisión aprobó el Reglamento Número 6385, el cual contiene, entre otras, disposiciones para reglamentar los procedimientos de representación. Conforme a ello, el procedimiento de representación se inicia con la presentación de una petición de parte de una organización sindical solicitando una elección para escoger un representante exclusivo. Véase: Sección 300 del Reglamento Número 6385, ante. Dicha petición tiene que cumplir con todos los requisitos reglamentarios. Véase: Sección 302 del Reglamento Número 6385, ante.

Luego de presentada la petición, la Comisión notificará a las partes para que comparezcan ante un agente de ésta y puedan discutir y estipular las controversias sobre el alcance y la composición de las unidades apropiadas.[11] Si la controversia subsiste la Comisión podrá ordenar la celebración de una Sesión

---

[11] Sección 305(B) del Reglamento Número 6385 de la Comisión.

Especial para la Determinación de Unidades Apropiadas.[12] En dicha Sesión las partes tendrán el derecho de presentar evidencia ante la Comisión sobre como debe quedar establecida la unidad apropiada.[13]

Las sesiones especiales serán públicas y comenzarán con una exposición oral de cada parte sobre como debe quedar constituida la unidad apropiada.[14] Luego de celebrada la Sesión Especial las partes podrán someter alegatos dentro del término que les conceda la Comisión.[15] Luego que Comisión haya obtenido toda la evidencia pertinente y cuente con las posiciones expresadas por las partes, entonces determinará cuál será la unidad apropiada y ordenará la celebración de una elección. Una vez la Comisión le notifique a las partes la Determinación de Unidad Apropiada, éstos tendrán catorce (14) días para radicar excepciones.[16] Luego de celebrada la elección y si no hay objeciones, la Comisión emitirá una Certificación

---

[12] Ibid.

[13] Resulta importante señalar que la Sección 309(B) del Reglamento Número 6385 de la Comisión dispone que "[l]as Sesiones Especiales para la Determinación de Unidades Apropiadas se considerarán procedimientos investigativos y no adversativos."

[14] Sección 309(D) del Reglamento Número 6385 de la Comisión.

[15] Sección 309(G) del Reglamento Número 6385 de la Comisión.

[16] Sección 309(H) del Reglamento Número 6385 de la Comisión.

de Representante Exclusivo y ordenará el cierre y archivo del caso.[17]


                                II

    Por otro lado, la Ley Núm. 45, ante, establece el ámbito de la revisión judicial de las decisiones emitidas por la Comisión. De esta manera, el referido estatuto establece en la Sección 6.1(g), 3 L.P.R.A. sec. 1451p, la revisión judicial de laudos de arbitraje[18]; en la sección 9.3(j), 3 L.P.R.A. sec. 1452c, la revisión de las determinaciones adjudicando controversias sobre prácticas ilícitas[19]; y por último la sección 10.1, 3 L.P.R.A. sec.

_____

[17] Sección 316 del Reglamento Número 6385 de la Comisión.

[18] La referida sección dispone:

    ...(g) La decisión o laudo del árbitro será final y firme conforme a derecho y deberá ajustarse a los parámetros contenidos en la sec. 1451j de este título. Solamente podrán impugnarse los laudos de arbitraje por errores de derecho y aquellos que sean contrarios a la disposición constitucional que prohíbe que las asignaciones hechas para un año económico excedan los recursos totales calculados para dicho año, mediante acción judicial ante el Tribunal de Circuito de Apelaciones el cual deberá actuar en torno a la misma dentro de un término no mayor de treinta (30) días.

[19] La referida sección dispone:

    ...(j) Cualquier parte adversamente afectada por una orden final de la Comisión podrá solicitar revisión de la misma ante el Tribunal de Circuito de Apelaciones, radicando en dicho Tribunal una petición escrita solicitando que la orden de la Comisión sea modificada o revocada. La solicitud de revisión deberá ser radicada

**(Continúa . . .)**

1452d, la revisión de órdenes y resoluciones finales de la Comisión. [20] En específico, <u>y en lo que respecta a la controversia hoy ante nuestra consideración</u>, la Sección 10.1 de la Ley Núm. 45, ante, dispone, en lo pertinente, que:

> El Tribunal de Circuito de Apelaciones, a solicitud de parte, tendrá jurisdicción para entender discrecionalmente en los recursos de revisión de <u>órdenes y resoluciones finales</u> de la Comisión según los términos que dispone las secs. 2101 et seq. de este título, conocidas como "Ley de Procedimiento Administrativo Uniforme". Los recursos de revisión serán competencia de los Paneles de la Región Judicial de San Juan...

Conforme a la referida disposición estatutaria, el Tribunal de Apelaciones podrá revisar las determinaciones de la Comisión <u>que sean órdenes o resoluciones finales según las disposiciones de la Ley de Procedimiento Administrativo Uniforme</u>. En virtud de lo anterior, debemos examinar las disposiciones de la Ley de Procedimiento Administrativo Uniforme, y su jurisprudencia interpretativa, para determinar cuales son las órdenes o resoluciones finales que el Tribunal de Apelaciones puede revisar.

---

dentro del término de treinta (30) días a partir de la fecha en que la orden advino final...

[20] Cabe destacar que en la Ley Núm. 45, ante, no hay disposición específica sobre la revisión judicial de las determinaciones sobre unidad apropiada que haga la Comisión.

En referencia a la revisión judicial de las decisiones administrativas, la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2172, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar un recurso de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la <u>orden o resolución final</u> de la agencia o a partir de la fecha aplicable de las dispuestas en la Seccción 2165 de este título, cuando el término para instar el recurso de revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para instar el recurso de revisión. La notificación podrá hacerse por correo.

De lo antes expuesto se puede colegir que son dos los requisitos para que una orden o resolución emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones. Estos son: i) que la parte adversamente afectada por la orden o resolución haya agotado los remedios provistos por la agencia[21] y ii) <u>que la orden o</u>

---

[21] La doctrina de agotamiento de remedios administrativos recogida en la sección 4.2 de la L.P.A.U., *ante*, constituye una norma de abstención judicial, cuyo propósito es evitar que las reclamaciones presentadas ante una agencia administrativa lleguen al foro judicial a destiempo. <u>Padilla Falú</u> v. <u>Administración de Viviendas</u>, res. el 26 de septiembre de 2001, 2001 T.S.P.R. 130; <u>Igartúa de la Rosa</u> v. <u>Administración del Derecho al Trabajo</u>, res. el 23 de diciembre de 1998, 98 T.S.P.R. 170.

resolución sea final y no interlocutoria.[22] Véase: Oficina de la Procuradora del Paciente v. Aseguradora MCS, IPA 603, res. el 22 de septiembre de 2004, 2004 T.S.P.R. 153; Junta Examinadora de Tecnólogos Médicos v. Elías, 144 D.P.R. 483 (1997).

La L.P.A.U. define el término "orden o resolución" como "cualquier decisión o acción agencial de aplicación particular que adjudique derechos y obligaciones de una o más personas específicas..." De igual forma, de forma general define dos (2) clases de órdenes o resoluciones: las parciales y las interlocutorias.

La Sección 1.3(g) de la L.P.A.U. define la orden o resolución parcial como "aquella acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma." 3 L.P.R.A. sec. 2102(g). De igual forma, define una orden interlocutoria como "aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal." 3 L.P.R.A. sec. 2102(h).

---

[22] Hemos expresado en ocasiones anteriores que el requisito de finalidad de las órdenes y resoluciones tiene un alcance análogo a la doctrina de agotamiento de remedios y que, de ordinario, ambas gozan de las mismas excepciones. Oficina de la Procuradora del Paciente v. Aseguradora MCS, IPA 603, res. el 22 de septiembre de 2004, 2004 T.S.P.R. 153; Junta Examinadora de Tecnólogos Médicos v. Elías, 144 D.P.R. 483 (1997). En virtud de ello, una resolución interlocutoria es revisable en casos excepcionales, o sea, se puede preterir el trámite administrativo cuando la agencia claramente carece de jurisdicción y la posposición conlleva un daño irreparable al afectado. Ibid.

No obstante, la L.P.A.U. no define el término orden o resolución final. A pesar de ello, la Ley contiene una descripción de lo que tiene que incluir una orden o resolución final; esto es, requiere que incluya unas determinaciones de hecho, las conclusiones de derecho de la decisión, una advertencia sobre el derecho a solicitar una reconsideración o revisión judicial según sea el caso y que la misma esté firmada por el jefe de la agencia o por cualquier otro funcionario autorizado por ley. 3 L.P.R.A. sec. 2164.

Asimismo, hemos expresado anteriormente que la orden o resolución final es aquella que pone fin a todas las controversias dilucidadas ante la agencia y cuyo efecto es sustancial sobre las partes. Tosado Cortés v. Autoridad de Energía Eléctrica, res. 12 de agosto de 2005, 2005 T.S.P.R. 113; Padilla Falú v. Administración de Viviendas, res. el26 de septiembre de 2001, 2001 T.S.P.R. 130; Junta Examinadora de Tecnólogos Médicos v. Elías, ante.[23] A tono

---

[23] Respecto a este asunto, nos señala el Profesor Demetrio Fernández Quiñones lo siguiente:

> Una vez el organismo administrativo ha rendido su decisión en el caso y la parte adversamente afectada ha agotado todos los remedios administrativos disponibles dentro del organismo, se puede presentar la solicitud de la revisión judicial. [...] Para interponer el recurso, la decisión administrativa tiene que ser final y además debe ser revisable. La decisión administrativa es final cuando ha decidido todas las controversias y no deje pendiente ninguna para ser decidida en el futuro. Es revisable cuando la parte afectada por ella haya cumplido

**(Continúa . . .)**

con lo anterior, los tribunales se abstendrán de evaluar la actuación de la agencia hasta tanto la persona o junta que dirija dicha entidad resuelva, en su totalidad, la controversia.

III

En el presente caso el Tribunal de Apelaciones desestimó el recurso de revisión de decisión administrativa por falta de jurisdicción, fundamentando su determinación en que, utilizando por analogía la Ley de Relaciones del Trabajo, las determinaciones de unidad apropiada sólo son revisables por la vía colateral, como parte de una determinación de práctica ilícita. Señaló, además, que la determinación de unidad apropiada hecha por la Comisión no es revisable ya que dicha decisión no es una acción administrativa que adjudique algún derecho u obligación, y además  no es una orden o resolución final porque las partes tienen la oportunidad de presentar ante la Comisión una petición de clarificación de unidad apropiada. <u>Erró al así hacerlo</u>.

---

con todos los requisitos y haya agotado todos los remedios administrativos disponibles. Demetrio Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, 2da ed., FORUM, 2001, Sec. 9.3, pág. 533.

Debemos señalar, en primer lugar, que en este caso <u>no</u> se debe utilizar por analogía la Ley de Relaciones del Trabajo. Reconocemos que la Ley Núm. 45 contiene disposiciones muy similares a las de la Ley de Relaciones del Trabajo, y que las funciones y deberes de la Junta de Relaciones del Trabajo comparan sustancialmente con las de la Comisión. <u>No obstante, el ámbito de revisión judicial de la Ley Núm. 45 es distinto al de la Ley de Relaciones del Trabajo</u>. Veamos.

El Inciso (3) del Artículo 5 de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. sec. 66, dispone que:

> (3)...Las conclusiones de la Junta, el procedimiento electoral, la resolución de la controversia relativa a la representación, <u>la determinación de la unidad</u>, y el certificado del resultado de cualquier elección así llevada a cabo, <u>serán finales y estarán sujetos a revisión judicial sólo de la manera que se dispone en el inciso (4) de esta sección</u>.

A su vez, el Inciso (4) del Art. 5 dispone que:

> (4)Siempre que una orden de la Junta <u>dictada de acuerdo con la sec. 70 de este título</u> se base, en todo o en parte, en hechos certificados después de una investigación o audiencia pública efectuada de acuerdo con el inciso (3) de esta sección, y exista una petición para que se ponga en vigor dicha orden y para que se revise, la certificación y el expediente de la investigación o audiencia efectuada de acuerdo con el inciso (3) de esta sección se incluirán en la transcripción del expediente completo que ha de presentarse de acuerdo con la sec. 70 de este título y entonces el decreto del tribunal, poniendo en vigor, modificando o anulando en todo o en parte la Orden de la Junta, se hará y se expedirá a base de los autos, el testimonio y los procedimientos expuestos en dicha transcripción.

Por otro lado, el Artículo 9 de la Ley Núm. 130, 29 L.P.R.A. sec. 70, en su Inciso (2) dispone, en parte, sobre el procedimiento de práctica ilícita que:

> (b) Cualquier persona perjudicada por una orden final de la Junta concediendo o negando, en todo o en parte, el remedio que se interesa, podrá obtener la revisión de dicha orden en el Tribunal Supremo de Puerto Rico, radicando en dicho tribunal una petición escrita suplicando que la orden de la Junta sea modificada o revocada.

Este Tribunal ha resuelto que de una lectura conjunta de los Incisos (3) y (4) del Artículo 5 de la Ley de Relaciones del Trabajo, ante, y del Artículo 9 de la referida Ley, se desprende que la intervención judicial con respecto a las decisiones que emite la Junta se da en virtud de la facultad revisora del tribunal y que ésta, a su vez, sólo puede ejercitarse una vez la Junta ha emitido una decisión final sobre una práctica ilícita del trabajo. Dicho de otra manera, hemos resuelto que las decisiones y órdenes dimanantes de casos de representación, sólo son revisables mediante un ataque colateral imbricado en una decisión relativa a alguna práctica ilícita. J.R.T. v. A.M.A., 119 D.P.R. 94 (1987); esquema de revisión que incorporamos de la jurisdicción federal a nuestro entorno jurídico. Véase, además: U.P.R. v. Asoc. de Profs. Universitarios, 136 D.P.R. 335, 349 (1994).

Es de notar que --a diferencia de la Ley de Relaciones del Trabajo, ante, la cual de ordinario limita

la revisión judicial a aquellas instancias en que la Junta de Relaciones del Trabajo ha emitido una decisión final sobre una práctica ilícita del trabajo-- la Ley Núm. 45, ante, expresamente establece una revisión directa al foro apelativo intermedio de todas las órdenes y resoluciones finales de la Comisión, ello conforme a las disposiciones de la Ley de Procedimiento Administrativo Uniforme.

IV

En virtud de lo anteriormente expuesto, en el presente caso debemos determinar si la resolución emitida, el 24 de julio de 2002, por la Comisión de Relaciones del Trabajo resolviendo las excepciones presentadas por A.R.P.E. sobre unidad apropiada, constituye, o no, una orden o resolución final conforme a las disposiciones de la L.P.A.U., y por lo tanto, revisable por el foro apelativo intermedio.

Ahora bien, al analizar la naturaleza de la referida decisión administrativa, es decir si es una final o interlocutoria, no podemos considerar, exclusivamente, la denominación que le ha dado la agencia que la emite dentro del esquema procesal administrativo. Es decir, no es el nombre lo que determina si una orden o resolución es final o interlocutoria. Es menester considerar con detenimiento los elementos de la decisión para determinar si, dado el estado de derecho vigente al momento del procedimiento administrativo, la decisión que se pretende revisar

judicialmente constituye una orden o resolución final o interlocutoria.

En el presente caso, el 15 de febrero de 2002, luego de haber celebrado una Sesión Especial, donde tanto A.R.P.E. como la C.U.T.E. presentaron evidencia, la Comisión emitió una Determinación sobre Unidad Apropiada. Inconforme con la determinación sobre unidad apropiada, A.R.P.E. presentó dentro del término reglamentario sus excepciones, solicitando que varios puestos fueran excluidos de ésta.

La Comisión ordenó una elección, y la misma se celebró el 26 de marzo de 2002; ello no obstante, la Comisión recusó los votos que emitieron los empleados que integraban los puestos que A.R.P.E. solicitó fueran excluidos, mientras se resolvía la moción con las excepciones. Luego de celebrada la elección, la Comisión certificó a la C.U.T.E. como el representante exclusivo de los integrantes de la unidad apropiada, el 17 de abril de 2002, debido a que el número de votos recusados no eran suficientes para afectar el resultado de la elección. El 24 de julio de 2004, la Comisión resolvió, finalmente, las excepciones presentadas por A.R.P.E., manteniendo la inclusión dentro de la unidad apropiada de los puestos impugnados.

De entrada debemos señalar que no compartimos el criterio del Tribunal de Apelaciones, a los efectos, de que la determinación sobre unidad apropiada no es una

decisión revisable judicialmente, por no ser la misma una acción administrativa que adjudique algún derecho u obligación.

La Ley de Procedimiento Administrativo Uniforme define adjudicación como "el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que corresponda a una parte." 3 L.P.R.A. sec. 2102(b). Así pues, la configuración de la unidad apropiada y la determinación de, si un puesto forma parte de la misma, constituye a nuestro juicio una adjudicación para efectos de la Ley de Procedimiento Administrativo Uniforme.

No se debe pasar por alto que, mediante la determinación sobre unidad apropiada, la Comisión le reconoce derechos sustantivos a los empleados públicos, en tanto le otorga el derecho a la negociación colectiva. De igual manera, dicha determinación le impone la obligación al patrono, en este caso A.R.P.E., de negociar con los empleados públicos, a través de su representante exclusivo, los términos y condiciones de empleo de todos los empleados incluidos en la unidad apropiada. Por lo tanto, resulta evidente que la configuración de la unidad apropiada es determinante en el ejercicio de los derechos y obligaciones de los empleados y patronos en el marco de las relaciones laborales.

El hecho de que las Sesiones Especiales sobre determinación de unidades apropiadas hayan sido

denominadas, en su reglamento, por la Comisión como procedimientos investigativos y no adversativos [24], no altera la realidad de que una vez culminada dicha faceta, la Comisión adjudica los derechos de las partes.[25] Resolver lo contrario implicaría que cualquier agencia, sometida a la Ley de Procedimiento Administrativo, podría inmunizar sus adjudicaciones con el mero hecho de denominar un procedimiento como investigativo. Evidentemente, dicha conclusión o situación no se puede sostener.

Asimismo, entendemos que la determinación de unidad apropiada de la Comisión en este caso es una resolución final, ya que conforme a la Ley de Procedimiento Administrativo y su jurisprudencia, la misma puso fin a

---

[24] Sección 310 del Reglamento Núm. 6385 de la Comisión.

[25] Debemos señalar que conforme al Reglamento de la Comisión la Sesión Especial para determinación de unidad apropiada reúne los elementos de un procedimiento adjudicativo toda vez que en dicho procedimiento se le permite a las partes presentar prueba, tanto documental como testifical; cada parte tendrá derecho hacer una exposición oral; y podrán presentar alegatos para sostener sus respectivas posiciones. Inclusive así lo reconoce la propia Comisión en la resolución inicial sobre unidad apropiada del 15 de febrero de 2002 en donde expresó:

> "Las partes tuvieron amplia oportunidad de presentar sus respectivas posiciones y someter toda la evidencia documental y testifical pertinente en apoyo a las mismas. Además, al concluir la Sesión Especial se les concedió un plazo de catorce días para la radicación de alegatos, si así lo interesaban."

todas las controversias dilucidadas ante la agencia y cuyo efecto es sustancial sobre las partes.[26]

En este caso la resolución sobre unidad apropiada cumple con los requisitos de la Ley de Procedimiento Administrativo Uniforme, ya que incluye determinaciones de hecho y conclusiones de Derecho; además, fue firmada por el Presidente de la Comisión. De igual manera, una vez la Comisión emitió la resolución recurrida, el 24 de julio de 2002, no quedaba asunto pendiente alguno que resolver, toda vez que ese organismo llevó a cabo el proceso eleccionario, y certificó al representante de la negociación colectiva que es la recurrida C.U.T.E. La Comisión emitió una determinación, con carácter final y no interlocutorio, de lo que constituyen los derechos sustantivos de las partes, por lo que el recurso de revisión debe estar disponible para acudir en alzada. Esta determinación no solo excluye o incluye puestos de la unidad apropiada, estableciendo que empleados tendrán derecho a la negociación colectiva, sino que desde el punto de vista de A.R.P.E. se emite un pronunciamiento

---

[26] Cabe destacar, de igual forma, que en este caso se cumplió con el requisito de agotar los remedios administrativos ya que A.R.P.E. presentó las excepciones a la determinación sobre unidad apropiada dentro del término reglamentario de catorce (14) días y luego que la Comisión emitiera la resolución resolviendo dichas excepciones, presentó oportunamente una moción de reconsideración conforme a la Ley de Procedimiento Administrativo Uniforme. Véase: 3 L.P.R.A. sec. 2165.

final, que altera sustancialmente las relaciones laborales en dicha entidad gubernamental.

En conclusión, y a tenor con la Ley de Procedimiento Administrativo Uniforme, estamos propiamente ante una resolución final, que adjudica derechos y obligaciones de las partes, por lo que la revisión judicial debe estar disponible ante el Tribunal de Apelaciones.

V

Por los fundamentos antes expuestos, procede revocar la resolución emitida por el Tribunal de Apelaciones en el presente caso, devolviéndose el mismo a ese foro para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Reglamentos
y Permisos

    Peticionario

       vs.                  CC-2003-319    CERTIORARI

Coordinadora Unitaria de
Trabajadores del Estado

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 19 de octubre de 2005

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente se dicta Sentencia revocatoria de la resolución emitida por el Tribunal de Apelaciones en el presente caso, devolviéndose el mismo a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo