EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Roberto Hernández Rodríguez<br>    Demandante-Recurrido<br><br>            v.<br><br>Colegio de Optómetras de<br>Puerto Rico<br>    Demandado-Recurrido<br><br>Eric Guzmán Flores<br>    Interventor-Peticionario | Certiorari<br><br>2002 TSPR 85<br><br>157 DPR _____ |

Número del Caso: CC-2001-490

Fecha: 24/junio/2002

Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon. Gilberto Gierbolini


Abogado de la Parte Peticionaria:
                    Lcdo. Víctor P. Miranda Corrada

Abogados de la Parte Demandante-Recurrido:
                    Lcdo. Ariel O. Caro Pérez
                    Lcdo. Arnaldo Castro Callejo

Abogado de la Parte Demandado-Recurrido:
                    Lcdo. Miguel González Vargas

Abogados de Pearle Vision Center of Puerto Rico:
                    Lcdo. Rafael Alonso Alonso
                    Lcdo. Pedro Santiago Rivera

Materia: Mandamus

        Este documento constituye un documento oficial del Tribunal Supremo
        que está sujeto a los cambios y correcciones del proceso de
        compilación y publicación oficial de las decisiones del Tribunal.
        Su distribución electrónica se hace como un servicio público a la
        comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Roberto Hernández Rodríguez
      Demandante-Recurrido

           vs.
                                    CC-2001-490
Colegio de Optómetras de
Puerto Rico
      Demandado-Recurrido


Eric Guzmán Flores
      Interventor-Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico, a 24 de junio de 2002.

En el presente caso debemos evaluar la validez del Código de Ética para la práctica de la optometría en Puerto Rico. Después del análisis correspondiente, resolvemos que el referido Código carece de eficacia por no haber sido aprobado conforme al procedimiento de notificación y comentarios que dispone la Ley de Procedimiento Administrativo Uniforme.[1]

---

[1] Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.* (en adelante, LPAU).

I.

Tanto el Dr. Eric R. Guzmán Flores, aquí peticionario, como el Dr. Roberto Hernández Rodríguez, presentaron sus candidaturas para ocupar el puesto de presidente del Colegio de Optómetras de Puerto Rico (en adelante, el Colegio). Posteriormente, el Colegio descalificó al doctor Guzmán como candidato por alegadamente ser empleado de corporaciones privadas no profesionales como Eye Center y Pearl Vision Center en violación del Artículo XXIII del Código de Ética del Colegio. Dicha disposición provee que, aparte de ciertas limitadas excepciones, un optómetra no podrá contratar sus servicios profesionales con terceras personas, a menos que la otra parte contratante fuese también un colegiado bonafide, oftalmólogo y/o institución que se rija por los cánones de ética y las leyes para la práctica de la optometría y estuviese por lo tanto, autorizado por ley a ejercer la optometría en Puerto Rico.

En vista de lo anterior, el doctor Guzmán acudió ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico en una acción contra el Colegio para impugnar su descalificación. Como resultado de esta acción judicial, dicho tribunal dictó sentencia en la que acogió un acuerdo entre las partes mediante el cual el Colegio se obligó a no impedir que el doctor Guzmán participara de las elecciones para la presidencia.

Así las cosas, el doctor Hernández presentó un recurso de *mandamus* ante el Tribunal de Primera Instancia contra el

Colegio. Alegó que el doctor Guzmán estaba inhabilitado para aspirar al puesto de presidente del Colegio porque mantenía una relación laboral indebida con corporaciones privadas no profesionales como Pearle Vision Center y Eye Center, lo cual contravenía las disposiciones del Artículo XXIII del Código de Ética, y que el Colegio y su Junta de Gobierno tenían el deber ministerial de descertificar y/o no aceptar la nominación del Dr. Guzmán al referido puesto.

El Colegio contestó la demanda y aceptó todas las alegaciones. Expresó además, que estaba de acuerdo con el sentir del doctor Hernández pero que, en vista de la sentencia emitida por el Tribunal de Distrito Federal, no podía impedir que el doctor Guzmán se postulara como candidato para presidente.

En el ínterin, el Colegio finalizó su proceso eleccionario y, como resultado del mismo, el doctor Guzmán venció al doctor Hernández por trece (13) votos.

Después de varios trámites procesales, el Tribunal de Primera Instancia celebró una vista y, luego de evaluar los planteamientos del doctor Hernández y del Colegio, emitió una orden paralizando todo procedimiento para certificar y/o juramentar al doctor Guzmán como presidente. Además, determinó que el doctor Guzmán era parte necesaria en el pleito y a tales efectos ordenó su emplazamiento. Posteriormente, el tribunal celebró otra vista argumentativa a la cual acudieron el doctor Hernández, el Colegio y el doctor Guzmán. En la misma el doctor Guzmán alegó, en síntesis, que

el Código de Ética del Colegio era nulo porque no fue aprobado conforme a la LPAU, *supra*. Sostuvo además, que el artículo XXIII de dicho Código excede los poderes delegados por la Asamblea Legislativa a la Junta Examinadora de Optómetras. Por último, solicitó al tribunal que ordenara al Colegio que lo certificara como su presidente.

Por su parte, el doctor Hernández alegó que el Reglamento y el Código de Ética del Colegio son válidos y eficaces porque fueron sometidos por el Colegio a la Junta Examinadora de Optómetras y ésta los aprobó mediante Resolución 1-98 del 15 de julio de 1998. También señaló que no se debe dejar desprovisto al Colegio de una Código de Ética sin antes aprobarse uno nuevo.

Después de evaluar los planteamientos de las partes, el tribunal dejó sin efecto la orden de paralización. Mientras tanto, el Colegio solicitó al tribunal que emitiera un interdicto permanente contra el doctor Guzmán para que cesara y desistiera de practicar la optometría a través de corporaciones privadas no profesionales en violación a la prohibición del Artículo XXIII del Código de Ética del Colegio y de la Ley General de Corporaciones de Puerto Rico.[2]

El tribunal de instancia celebró una vista argumentativa, y tras evaluar los planteamientos de las partes y la totalidad de la prueba, emitió sentencia por la cual declaró con lugar la demanda de *mandamus*. Resolvió que

---

[2] Ley Núm. 144 de 1 de agosto de 1995, 14 L.P.R.A. secs. 2601 *et seq.*

**el Reglamento y el Código de Ética del Colegio fueron aprobados válidamente, al amparo de las disposiciones de la Ley del Colegio de Optómetras,[3] y que era ilegal que las corporaciones privadas no profesionales practiquen la optometría. Determinó además, que el Colegio tenía el deber ministerial de impedir la elección del doctor Guzmán como presidente del Colegio porque su relación profesional con corporaciones privadas no autorizadas para ejercer la optometría violaba el Artículo XXIII del Código de Ética. Por ende, declaró sin lugar la petición del doctor Guzmán para que el Colegio lo certificara como su presidente.**

Oportunamente, el doctor Guzmán acudió ante el Tribunal de Circuito de Apelaciones, el cual confirmó la sentencia recurrida. Resolvió que el Código de Ética fue aprobado válidamente por la Junta Examinadora de Optómetras, por lo que el mismo es obligatorio para todos los colegiados y que, en vista de que el doctor Guzmán ha violado sus disposiciones al mantener una relación profesional con Pearle Vision y Eye Center, instancia actuó correctamente al expedir el *mandamus*.

Inconforme con la determinación del Tribunal de Circuito de Apelaciones, el doctor Guzmán acudió ante nos. Alega que el Código de Ética del Colegio, en el cual se prohíbe la práctica de la optometría a través de corporaciones privadas no profesionales, es nulo por no haberse aprobado conforme a la LPAU, *supra*. Señala también que dicha prohibición es *ultra vires*

porque excede la delegación de poderes conferida por la asamblea legislativa a la Junta de Examinadora de Optómetras.

Luego de evaluar la petición de *certiorari*, expedimos el auto y accedimos a la solicitud de Pearle Vision Center of Puerto Rico, Inc. para comparecer como A*micus Curiae* en el presente caso. Con el beneficio de las comparecencias de las partes y del A*micus Curiae*, estamos en posición de resolver.

Procede que examinemos, en primer lugar, a quién le corresponde aprobar el Código de Ética para la práctica de la optometría en Puerto Rico y cuál es el procedimiento aplicable para la aprobación del referido Código.

I.

La Ley del Colegio de Optómetras, *supra*, dispone en su artículo 3 las facultades concedidas al Colegio, entre las cuales se encuentran las siguientes:

El Colegio de Optómetras de Puerto Rico tendrá facultad para:

[...]

(e) Redactar y adoptar un reglamento que será obligatorio para todos los miembros, según lo adopte e implante la Asamblea que a tal fin se constituya para su aprobación, o en defecto de dicha Asamblea, según lo redacte e implante la Junta Directiva que más adelante se establece; así como para enmendar dicho reglamento en la forma y bajo los requisitos que en el mismo se instituyan.

[...]

**(i) Someter para su <u>adopción</u> por la Junta Examinadora, un Código de Ética Profesional que**

[3] Ley Núm. 129 de 17 de diciembre de 1993, 20 L.P.R.A. sec. 545 *et seq.* (en adelante, Ley del Colegio de Optómetras).

**regirá la conducta de los optómetras**.    (Énfasis suplido).   20 L.P.R.A. sec. 545b.

Al momento en que el Colegio le presentó el Código de Ética a la Junta Examinadora de Optómetras para que ésta lo aprobara, la ley vigente era la Ley Núm. 80 de 26 de junio de 1964, según enmendada, 20 L.P.R.A. sec. 531 *et seq.* (en adelante Ley de la Junta Examinadora de Optómetras de 1964). Mediante dicha ley se dispuso que la Junta Examinadora tenía la facultad y el deber de expedir, denegar, suspender o revocar la licencia para la práctica de la optometría en Puerto Rico; preparar y administrar el examen de reválida para la práctica de la optometría; adoptar las reglas y reglamentos que sean necesarios para la ejecución de las disposiciones de la ley; atender y resolver las querellas presentadas por violación a la ley; citar testigos y tomar declaraciones y juramentos en relación a los asuntos de su competencia; e imponer multas, previa vista administrativa, a quienes violen la ley.  20 L.P.R.A. sec. 534.

En 1990, la referida sección 534 de la Ley de la Junta Examinadora de Optómetras de 1964, *supra*, fue enmendada para disponer que "[l]a Junta deberá cumplir con lo establecido en las secs. 2101 *et seq.* del Título 3, conocidas como Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, al ejercer las facultades que se le conceden mediante [esta ley] para reglamentar, investigar y adjudicar los asuntos bajo su jurisdicción".[4] *Véase además*, el Art. 5 de la referida ley sobre la obligación de la Junta

---

[4] Ley Núm. 29 de 7 de agosto de 1990.

Examinadora de Optómetras de cumplir con las disposiciones de la LPAU al reglamentar, investigar y adjudicar los asuntos de su competencia. 20 L.P.R.A. sec. 535.

En 1998 el Colegio le remitió a la Junta Examinadora de Optómetras un Código de Ética para la práctica de la optometría en Puerto Rico. Mediante Resolución 1-98 de 15 de julio de 1998, ésta aprobó dicho Código de Ética, el cual rige en la actualidad la conducta de los optómetras que ejercen la profesión en el País.

A pesar de que en 1999 la Ley de la Junta Examinadora de Optómetras de 1964, *supra*, fue derogada por la Ley Núm. 246 del 15 de agosto, 20 L.P.R.A. sec. 544 *et seq.*, valga aclarar que el caso de autos debe examinarse al amparo de las disposiciones de la ley de 1964, pues fue bajo ésta que se aprobó el Código de Ética en discusión.[5]

A la luz de las disposiciones legales transcritas arriba, se desprende con claridad que la obligación de aprobar y adoptar un Código de Ética para la práctica de la optometría en Puerto

---

[5] En cuanto al asunto que nos concierne en el presente caso, esta nueva ley dispone que la Junta Examinadora de Optómetras, con la colaboración del Colegio, tendrá la obligación de preparar, redactar y publicar un Código de Ética para la práctica de la optometría en Puerto Rico dentro de los ciento veinte (120) días a partir de la vigencia de la ley. Para ello deberá seguir los procedimientos que establece la LPAU, *supra*. Dicho Código de Ética entrará en vigor una vez sea ratificado mediante votación secreta por no menos de dos terceras partes de los miembros del Colegio. 20 L.P.R.A. sec. 544y.

Rico le corresponde a la Junta Examinadora de Optómetras en cumplimiento con las disposiciones de su ley habilitadora. Como vimos, la Ley de la Junta Examinadora de Optómetras de 1964, *supra*, imponía a la Junta Examinadora de Optómetras la obligación de cumplir con las disposiciones de la LPAU al ejercer sus facultades para reglamentar, investigar y adjudicar. 20 L.P.R.A. sec. 534(m) y 535. Es decir, aunque el Colegio colabore en la adopción del Código de Ética, es la Junta Examinadora de Optómetras quien tiene la obligación última de aprobar el Código de Ética para la práctica de la optometría en Puerto Rico en cumplimiento con las disposiciones pertinentes de la LPAU, *supra*.

Aclarado lo anterior, veamos entonces la validez del Código de Ética para la práctica de la optometría en Puerto Rico, según fue aprobado al amparo de la Ley de la Junta Examinadora de Optómetras de 1964, *supra*. En particular debemos examinar, con respecto a las disposiciones de la LPAU, *supra*, cuál es el procedimiento aplicable para la aprobación del referido Código de Ética y si éste se cumplió a cabalidad.

II.

El subcapítulo II de la LPAU detalla el procedimiento que una agencia debe observar para que una regla o reglamento de naturaleza legislativa tengan fuerza de ley después de aprobado. En síntesis, se requiere que se notifique a la ciudadanía la reglamentación propuesta mediante su publicación en un diario de circulación general y que se conceda un plazo

no menor de treinta (30) días desde dicha publicación para someter comentarios por escrito. 3 L.P.R.A. secs. 2121 y 2122. Esta notificación contendrá un resumen o explicación breve de los propósitos de la reglamentación propuesta, una cita de la ley que autoriza dicha reglamentación y la forma, el sitio, la fecha y hora en que se podrán someter comentarios por escrito o solicitar mediante escrito fundamentado una vista oral sobre la reglamentación propuesta. 3 L.P.R.A. sec. 2121. Se deberá indicar además, el lugar físico donde estará disponible para el público el texto completo de la reglamentación a adoptarse.[6] Id.

Una vez se adopta el reglamento, la agencia deberá presentarlo ante la consideración del Secretario de Estado, el cual posee la facultad de rechazarlo, modificarlo o aprobarlo. 3 L.P.R.A. secs. 2128, 2131 y 2132. Si el reglamento es aprobado, el Secretario de Estado deberá publicar una síntesis de su contenido en dos (2) periódicos de circulación general, con expresión de su número, fecha de vigencia y agencia que lo aprobó. 3 L.P.R.A. sec. 2128. Como norma general, el

---

[6] La Ley Núm. 205 de 25 de agosto de 2000 enmendó esta sección para disponer que la publicación del reglamento propuesto se hará en español y en inglés en no menos de un periódico de circulación general en Puerto Rico y en español e inglés en la Red de Internet. Los comentarios por escrito se podrán someter por correo electrónico y la agencia al recibirlos acusará recibo de los mismos por correo electrónico dentro de dos (2) días laborables de su recibo. El aviso publicado en el periódico deberá contener, además, la dirección electrónica de la página donde la agencia publicó el aviso en la Red y el texto completo de la reglamentación.

reglamento comenzará a regir pasados treinta (30) días desde su radicación ante el Departamento de Estado.[7]  Id.

La fecha en que se entiende que un reglamento fue debidamente radicado ante el Departamento de Estado es aquella en que el Secretario de Estado le concede su aprobación. 3 L.P.R.A. sec. 2131. La agencia deberá, además, conservar un expediente con los documentos relacionados con la promulgación del reglamento. 3 L.P.R.A. sec. 2126. Sobre el procedimiento de reglamentación de la LPAU véase *además*, Asociación de Farmacias v. Departamento de Salud, 2002 T.S.P.R. 13, res. el 5 de febrero de 2002;  Municipio de San Juan v. Junta de Calidad Ambiental, 2000 T.S.P.R. 183, res. el 14 de diciembre de 2000.

Ahora, no toda regla o reglamento tiene que aprobarse conforme al procedimiento de reglamentación formal que resumimos anteriormente. La LPAU expresamente exime de dicho procedimiento a las "reglas interpretativas", las cuales incluyen las reglas relacionadas con la administración interna

---

[7] La Ley Núm. 205, *supra*, enmendó la sección 2128 de la LPAU para disponer un requisito adicional al procedimiento de reglamentación.  Se establece que "[u]na vez presentado un reglamento en el Departamento de Estado, se radicará en la Biblioteca Legislativa una copia del mismo con la constancia de su presentación, y de su traducción al inglés si la misma fue presentada simultáneamente. El Director de la Oficina de Servicios Legislativos dispondrá por reglamento el formato para la radicación de los documentos, y su medio, que podrá ser en papel o por cualquier vía electrónica. La radicación del reglamento en la Biblioteca Legislativa es un requisito indispensable para la validez del mismo".

de la agencia que no afectan directa y sustancialmente los derechos del público en general y las declaraciones interpretativas y de política general que no tienen efecto legal. 3 L.P.R.A. sec. 2101(*l*)(1)(2). En realidad lo que sucede es que la LPAU excluye estas instancias de su definición de regla o reglamento. Por lo tanto, no les aplica el procedimiento formal de reglamentación. Con relación a estas reglas, hemos expresado que son adoptadas para darle uniformidad a los procesos internos de las agencias, pautar la discreción administrativa u otros fines internos. Agosto Serrano v. F.S.E., 132 D.P.R. 866 (1993).

En cuanto a las llamadas reglas legislativas, las cuales sí tienen que observar el procedimiento de reglamentación formal para su validez, las hemos descritos como aquéllas que una agencia administrativa formula al amparo de una delegación expresa de la Asamblea Legislativa, para darle contenido sustantivo detallado a alguna norma estatutaria general o de algún otro modo complementar normativamente el esquema legislativo. Agosto Serrano v. F.S.E., *supra*. Su propósito es crear derechos, imponer obligaciones y establecer un patrón de conducta que tiene fuerza de ley. Asociación de Farmacias v. Departamento de Salud, *supra*; Municipio de San Juan v. Junta de Calidad ambiental, *supra*.

**Claro está, para que una reglamentación de naturaleza legislativa sea vinculante y determinante de derechos, deberes**

**u obligaciones de las personas sujetas a la jurisdicción de la agencia, tiene que haber sido aprobada mediante el procedimiento de notificación y comentario que dispone la LPAU, y el cual reseñamos anteriormente**. 3 L.P.R.A. sec. 2127; Asociación de Farmacias v. Departamento de Salud, *supra;* Municipio de San Juan v. Junta de Calidad ambiental, *supra*.

Teniendo en consideración la normativa anterior, veamos los hechos del caso de autos.

### III.

En el presente caso, no cabe duda de que el Código de Ética vigente para la práctica de la optometría es una regla que fue formulada por la Junta Examinadora de Optómetras al amparo de una delegación expresa de la Asamblea Legislativa, con el fin de complementar normativamente el esquema legislativo. Su propósito es apuntar los deberes y obligaciones éticas de los optómetras que practican la profesión en Puerto Rico. Por consiguiente, como estamos ante una reglamentación legislativa, su aprobación debió de haberse realizado conforme al procedimiento de notificación y comentario dispuesto en la LPAU, *supra*. Nótese además, que la propia derogada Ley de la Junta de Optómetras de 1964, *supra*, al amparo de la cual se aprobó dicho Código de Ética, ordenaba que se observarán las disposiciones de la LPAU, *supra*, en todo procedimiento de reglamentación. 20 L.P.R.A. secs. 534(m) y 535.

De todas formas, la LPAU misma obliga a la Junta Examinadora de Optómetras, como a toda agencia gubernamental

no exceptuada expresamente de su aplicación, a cumplir con sus disposiciones al ejercer facultades cuasi-judiciales y cuasi-legislativas. 3 L.P.R.A. sec. 2192(a). Era imprescindible, por lo tanto, que al aprobarse el Código de Ética para la práctica de la optometría en Puerto Rico se cumpliera con los requisitos de notificación de la regla propuesta, concesión de oportunidad a la ciudadanía de presentar sus comentarios y publicación de la regla adoptada, para que dicho Código de Ética entrara en vigor como una reglamentación legislativa. *Véase* Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Editorial Forum, 1993, páginas 120-121. Estos requisitos van a la médula del debido proceso de ley estipulado por la propia LPAU. Id. El lenguaje de las disposiciones legales que los implementan exige su cumplimiento de manera obligatoria. Id.

A menos que se trate de una de las excepciones específicas provistas en la LPAU, *supra*, la agencia debe cumplir con las disposiciones de dicha ley al embarcarse en un procedimiento de reglamentación, si pretende que sus reglas tengan efecto y fuerza de ley. No hay nada que avale la decisión de una agencia administrativa de reemplazar el esquema regulador de la LPAU, *supra*, por un procedimiento de su propia invención. *Véase* Schwartz, Administrative Law, 3rd. ed., Little, Brown and Co., 1991, pág. 194.

A igual resultado llegó el Tribunal Supremo Federal en C. B. Morton v. Ruiz, 415 U.S. 199 (1974). En esa ocasión se

invalidó una reglamentación del *Bureau of Indians Affairs* que había sido aprobada desde hacía más o menos quince (15) años. Se resolvió que al incumplirse con las disposiciones de la Ley Federal de Procedimiento Administrativo Uniforme, [8] que requieren la publicación de las reglas substantivas, la agencia no le impartió eficacia y validez a su reglamentación. "The conscious choice of the Secretary not to treat this extremely significant eligibility requirement,..., as a legislative-type rule, renders it ineffective so far as extinguishing rights of those otherwise within the class of beneficiaries contemplated by Congress". C. B. Morton v. Ruiz, *supra*, a la pág. 236.

Asimismo, en Chrysler Corporation v. Brown, 441 U.S. 281 (1979), el más alto foro federal se negó a darle "fuerza y efecto de ley" a una reglamentación adoptada por el Departamento del Trabajo Federal porque no fue aprobada conforme al procedimiento de notificación y comentarios dispuesto en la Ley Federal de Procedimiento Administrativo Uniforme, *supra*. En esa ocasión se determinó lo siguiente:

> There is also a procedural defect in the [Department of Labor's Office of Federal Contract Compliance Programs] disclosure regulations which precludes courts from affording them the force and effect of law. That defect is a lack of strict compliance with the APA… Certainly, regulations subject to the APA cannot be afforded the "force and effect of law" if not promulgated pursuant to the statutory procedural minimum found in that Act. *See, e. g., Morton v. Ruiz, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); United States v. Allegheny-Ludlum Steel Corp., 406 U.S. 742, 758, 92 S.Ct. 1941, 1951, 32 L.Ed.2d 453 (1972).*

[…]

---

[8] 5 U.S.C.A. sec. 551 *et seq.*

> Section 4 of the APA, 5 U.S.C. § 553, specifies that an agency shall afford interested persons general notice of proposed rulemaking and an opportunity to comment before a substantive rule is promulgated.
>
> […]
>
> In enacting the APA, Congress made a judgment that notions of fairness and informed administrative decision-making require that agency decisions be made only after affording interested persons notice and an opportunity to comment. With the consideration that is the necessary and intended consequence of such procedures, [Department of Labor's Office of Federal Contract Compliance Programs] might have decided that a different [regulation] was more appropriate.

No obstante lo anterior, el único procedimiento que llevó a cabo la Junta Examinadora de Optómetras para aprobar el Código de Ética vigente fue emitir la Resolución 1-98 del 15 de julio de 1998 a esos efectos. No existe controversia en cuanto a que se obvió el cumplimiento de las disposiciones sobre reglamentación de la LPAU, *supra*. Sin embargo, la mera aprobación del Código de Ética mediante resolución no es suficiente para que el mismo sea vinculante y obligatorio para los colegiados. Siendo esto así, dicho Código es nulo y carece de toda eficacia. No podemos avalar entonces, la orden de los foros inferiores para que el Colegio no certifique y/o juramente al doctor Guzmán como su presidente amparándose en una disposición que carece de eficacia alguna.

En vista del resultado al que llegamos, no discutiremos los planteamientos sustantivos del doctor Guzmán en cuanto a que el Art. XXIII del Código de Ética del Colegio excede las facultades que se le delegaron a la Junta Examinadora de

Optómetras mediante la derogada Ley de la Junta Examinadora de Optómetras de 1964, *supra*.

Conforme a lo anterior, se revoca el dictamen del Tribunal del Circuito de Apelaciones. Dado que el Código de Ética para la práctica de la optometría en Puerto Rico es nulo, se deniega el m*andamus*. Además, le ordenamos al Colegio de Optómetras de Puerto Rico que certifique al Dr. Eric R. Guzmán Flores como presidente de dicha institución. Si el Colegio de Optómetras de Puerto Rico decide ejercer su facultad de someter a la Junta Examinadora de Optómetras un nuevo Código de Ética, para aprobarlo ésta deberá actuar conforme al procedimiento de reglamentación dispuesto en la Ley de Procedimiento Administrativo Uniforme, *supra*, y conforme a la delegación de poderes contenida en la Ley de la Junta Examinadora de Optómetras de 1999, *supra*.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Roberto Hernández Rodríguez
      Demandante-Recurrido

          vs.                                    CC-2001-490

Colegio de Optómetras de
Puerto Rico
      Demandado-Recurrido


Eric Guzmán Flores
      Interventor-Peticionario



                         SENTENCIA



        San Juan, Puerto Rico, a 24 de junio de 2002.


        Por los fundamentos expuestos en la Opinión que
antecede, la cual se hace formar parte íntegra de la
presente Sentencia, se revoca el dictamen del Tribunal
del Circuito de Apelaciones y se deniega el *mandamus*.
Además, se le ordena al Colegio de Optómetras de Puerto
Rico que certifique al Dr. Eric R. Guzmán Flores como
presidente de dicha institución.

        Así lo pronunció, manda el Tribunal y certifica
la Secretaria del Tribunal Supremo. El Juez Asociado
señor Corrada del Río inhibido. El Juez Asociado señor
Rivera Pérez no intervino.



                         Patricia Otón Olivieri
                    Secretaria del Tribunal Supremo