EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pablo Crespo Claudio, Director Ejecutivo de la Asociación de Empleados del E.L.A. de P.R., etc. <br><br> Peticionarios <br><br> vs. <br><br> Oficina de Ética Gubernamental <br><br> Recurrida | Certiorari <br><br> 2008 TSPR 84 <br><br> 174 DPR ____ |

Número del Caso: CC-2007-622

Fecha: 16 de mayo de 2008

Tribunal de Apelaciones:

      Región Judicial de San Juan

Juez Ponente:

      Hon. Mildred G. Pabón Charneco

Abogados de la Parte Peticionaria:

      Lcdo. Pedro E. Ortiz Álvarez
      Lcdo. Jesús Antonio Rodríguez Urbano
      Lcda. Yariel Flores Milán

Abogados de la Parte Recurrida:

      Lcda. Gretchen Camacho Rossy

      Lcda. Gladys M. Malpica de Schaffer
      Directora Ejecutiva
      Oficina de Ética Gubernamental

Materia: Derecho Administrativo, Revisión Judicial de Decisiones Administrativas bajo la Ley de Procedimiento Administrativo Uniforme

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Pablo Crespo Claudio,
Director Ejecutivo de la
Asociación de Empleados del
E.L.A. de P.R., etc.

   Peticionarios

         v.

Oficina de Ética Gubernamental

   Recurrida

CC-2007-622     Certiorari

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 16 de mayo de 2008.

En esta ocasión, nos corresponde determinar –como cuestión de umbral– si la opinión emitida por la Oficina de Ética Gubernamental en el caso de epígrafe fue producto de un proceso adjudicativo, de modo que pueda ser considerada como una orden o resolución final revisable según las disposiciones de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 11 de agosto de 1988, 3 L.P.R.A. sec. 2101 *et seq.* Por entender que el proceso mediante el cual se emitió la referida opinión no constituye propiamente un procedimiento adjudicativo y que, por tanto, la misma no puede ser considerada para estos fines una "orden o resolución final", concluimos que el foro apelativo

carecía de jurisdicción para revisar su corrección mediante el recurso de revisión judicial.

## I

El 1 de mayo de 2006 el Director Ejecutivo de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico (en adelante, AEELA), Sr. Pablo Crespo Claudio, le cursó una misiva a la Oficina de Ética Gubernamental indicándole que no había recibido respuesta a una comunicación enviada en el año 2003. Según expuso el señor Crespo Claudio en la carta, en esa comunicación anterior éste le había manifestado a la Oficina de Ética Gubernamental su posición con respecto a la ausencia de autoridad de dicha agencia para requerirle a él y a los demás funcionarios de AEELA que no son empleados públicos rendir los informes financieros que exige la Ley de Ética Gubernamental, Ley Núm. 12 de 24 de julio de 1985, según enmendada, 3 L.P.R.A. sec. 1801 *et seq.* En la mencionada comunicación, el señor Crespo Claudio reiteró su posición e indicó que desde entonces ha estado rindiendo los informes financieros de forma voluntaria. No obstante, aclaró que ante la ausencia de respuesta, consideraría que la Oficina de Ética Gubernamental no pudo rebatir sus fundamentos y, por ende, anunció que sólo presentaría un último informe.

En respuesta a la misiva del señor Crespo Claudio, la Directora Ejecutiva Interina de la Oficina de Ética Gubernamental, Sra. Wanda Torres Velázquez, emitió la Opinión Núm. OPC-04-002 al amparo del Reglamento de Opiniones y

Consultas de la Ley de Ética Gubernamental, Reglamento Núm. 5292 de 18 de julio de 1995. Tras el correspondiente análisis, la Oficina de Ética Gubernamental concluyó que los funcionarios de AEELA, incluyendo al señor Crespo Claudio, están cobijados por las disposiciones de la Ley de Ética Gubernamental, *supra*. A base de ello, determinó que tanto el señor Crespo Claudio como los miembros de la Junta de Directores y demás directores de oficinas y departamentos están obligados a rendir los informes financieros exigidos por ley. Finalmente, le advirtió al señor Crespo Claudio de su derecho a solicitar reconsideración o acudir directamente en revisión judicial ante el Tribunal de Apelaciones dentro del término de treinta (30) días a partir del archivo en autos de copia de la notificación de la Opinión.

Inconforme, el señor Crespo Claudio presentó una moción de reconsideración reiterando su posición de que los funcionarios de AEELA que no son empleados públicos no están sujetos a las disposiciones de la Ley de Ética Gubernamental, *supra*, y que, por ende, no están obligados a rendir los informes financieros. El señor Crespo Claudio basó su argumento, esencialmente, en que la Ley de Ética Gubernamental, *supra*, no fue enmendada para incluir a los funcionarios de AEELA y en que la Ley Núm. 123 de 11 de agosto de 1996 (en adelante, Ley Núm. 123), que sujeta la entidad a los poderes de la Oficina de Ética Gubernamental refiere, a su vez, a las disposiciones de dicha legislación.

Por tanto, sostiene que la aludida legislación no tiene el alcance que le atribuye la Oficina de Ética Gubernamental.

Tras acoger oportunamente la moción de reconsideración, la Oficina de Ética Gubernamental emitió una Opinión en Reconsideración reiterando su posición original.  Al igual que en la Opinión anterior, la entidad le advirtió al señor Crespo Claudio de su derecho a acudir en revisión judicial ante el Tribunal de Apelaciones.

Conforme a dichas instrucciones, y por encontrarse insatisfecho con el dictamen, el señor Crespo Claudio acudió en revisión judicial ante el Tribunal de Apelaciones pero también presentó una demanda de sentencia declaratoria ante el Tribunal de Primera Instancia, Sala Superior de San Juan.[1] En el recurso de revisión, el señor Crespo Claudio hizo constar que acudía ante el foro apelativo, únicamente, porque esas fueron las instrucciones de la Oficina de Ética Gubernamental.  No obstante, aclaró que —a su entender— dicho foro no poseía jurisdicción para entender en la controversia mediante el mecanismo de revisión judicial porque la Opinión emitida por la Oficina de Ética Gubernamental era meramente consultiva y no fue el resultado de un proceso adjudicativo.

Ahora bien, en consideración a la posibilidad de que el foro apelativo ejerciera jurisdicción sobre el asunto, el señor Crespo Claudio señaló los errores en los que —a su juicio— incurrió la Oficina de Ética Gubernamental en la

---

[1] Según surge del expediente, dicho proceso fue paralizado por el foro de instancia hasta que se resuelva el presente trámite apelativo.

Opinión objeto de escrutinio. A tales efectos, reiteró su posición de que los funcionarios de AEELA que no son empleados públicos no están sujetos al poder de fiscalización y supervisión de la Oficina de Ética Gubernamental. Ello en vista de que la ley orgánica de la Oficina de Ética Gubernamental no fue enmendada para ampliar su marco de acción y porque, a su entender, la Ley Núm. 123, *supra*, sólo pretendió sujetar a los poderes de la agencia a los empleados que de por sí son funcionarios públicos; es decir, a los miembros de la Asamblea de Delegados y a los miembros de la Junta de Directores.

La Oficina de Ética Gubernamental, por su parte, se expresó en torno al argumento del señor Crespo Claudio relacionado a la ausencia de jurisdicción del Tribunal de Apelaciones. En síntesis, adujo que, si bien la Opinión recurrida no constituye una determinación adjudicativa formal, la misma fue producto de un proceso adjudicativo informal que, según las disposiciones de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2101 *et seq.* (en adelante, L.P.A.U.), puede ser revisado mediante el recurso de revisión judicial.

Tras analizar los argumentos de las partes, el Tribunal de Apelaciones resolvió que tenía jurisdicción para atender el recurso porque, "una vez se establece su posición vinculante en una opinión [la de la Oficina de Ética Gubernamental], ello podría afectar el proceso de

adjudicación formal que se conduzca ante la agencia". Aclarado ese aspecto, confirmó el análisis de la Oficina de Ética Gubernamental en torno al deber del Director Ejecutivo de AEELA y de otros funcionarios de la entidad de rendir los informes financieros que exige la Ley de Ética Gubernamental, *supra*.

Todavía inconforme, el señor Crespo Claudio acude ante nos y, básicamente, reproduce los mismos señalamientos que presentó ante la consideración del foro apelativo. Examinada la petición, acordamos expedir. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

La Ley de la Judicatura de 2003, Ley Num. 201 de 22 de agosto de 2003, 4 L.P.R.A. sec. 24 *et seq.*, dispone que el Tribunal de Apelaciones revisará, como cuestión de derecho, las decisiones, órdenes y resoluciones finales de los organismos o agencias administrativas **conforme a lo dispuesto en la L.P.A.U.** Véase Art. 4.006, 4 L.P.R.A. sec. 24y(c). La L.P.A.U., a su vez, establece en su sección 4.1 que las normas relativas a la revisión judicial se extienden a todas las órdenes, resoluciones y providencias adjudicativas dictadas por las agencias administrativas que no estén expresamente exceptuadas por ley. 3 L.P.R.A. sec. 2171.

En particular, la ley dispone que "[u]na **parte adversamente afectada por una orden o resolución final** de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo apelativo correspondiente podrá

presentar un recurso de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días a partir del archivo en autos de copia de la notificación de la orden o resolución final de la agencia… " (énfasis suplido). 3 L.P.R.A. sec. 2172.

El concepto "orden o resolución" mencionado en la referida disposición se define como cualquier decisión o acción agencial de aplicación particular que **adjudique derechos u obligaciones** de una o más personas específicas o que imponga penalidades o sanciones administrativas, excluyendo las órdenes ejecutivas emitidas por el Gobernador. Véase 3 L.P.R.A. sec. 2102(f). Precisamente, según la L.P.A.U., la "adjudicación" es el proceso mediante el cual la agencia determina tales derechos u obligaciones. 3 L.P.R.A. sec. 2102(b).

Ahora bien, para que una orden o resolución sea considerada final, se requiere que la misma le ponga fin al caso ante la agencia y que tenga efectos sustanciales sobre las partes.[2] Comisionado de Seguros v. Universal Insurance,

---

[2] En este sentido, nuestro ordenamiento se ajustó a la norma que impera en la jurisdicción federal a tenor con el *Administrative Procedure Act*, 5 U.S.C. 551 *et seq*, el cual requiere que exista una "acción administrativa final" ("final agency action") para que se active el derecho a la revisión judicial. Véase 5 U.S.C. sec. 704. En específico, se deben satisfacer dos condiciones: (1) que la acción de la agencia represente el final del proceso decisorio, de manera que no sea tentativa o interlocutoria y (2) que mediante la misma se determinen derechos u obligaciones o que de ella puedan surgir consecuencias legales. Bennet v. Spear, 520 U.S. 154 (1997); Port of Boston Marine v. Rederiaktiebolaget, 400 U.S. 62 (1970). De hecho, a base del criterio de finalidad, algunos tribunales se han negado a revisar memorandos y otros

res. 1 de febrero de 2006, 2006 TSPR 15; ARPE v. Coordinadora Unitaria de Trabajadores, res. 19 de octubre de 2005, 2005 TSPR 147. Además, para que dicha decisión tenga carácter de finalidad debe incluir determinaciones de hecho, conclusiones de derecho y una advertencia sobre el derecho a solicitar reconsideración o revisión judicial. 3 L.P.R.A. sec. 2164. Igualmente, la misma debe estar firmada por el jefe de la agencia o por un funcionario autorizado. *Id*; Com. de Seguros v. Universal, *supra*, ARPE v. Coordinadora Unitaria de Trabajadores, *supra*, Tosado Cortés v. AEE, res. 12 de agosto de 2005, 2005 TSPR 133; Padilla Falú v. A.D.V., 155 D.P.R. 183 (2001); Junta Exam. de Tecnólogos Médicos v. Elías, 144 D.P.R. 483 (1997).

No cabe duda que al incorporar tales requisitos el legislador se aseguró que la intervención judicial se realizara después de que concluyeran los trámites administrativos y se adjudicaran todas las controversias pendientes ante la agencia, de manera que no haya una intromisión de los tribunales a destiempo. Depto. de Educación v. Sindicato Puertorriqueño de Maestros, res. 13 de julio de 2006, 2006 TSPR 121; Comisionado de Seguros v. Universal Insurance, *supra*.

_____

documentos similares al que nos ocupa. Véase, por ejemplo, Aerosource v. Slater, 142 F.3d 572 (3d Cir. 1998), donde se entendió que en realidad la determinación de la agencia no imponía una obligación o denegaba un derecho, y Appalachian Energy Group v. EPA, 33 F.3d 319 (4th Cir. 1994), donde se resolvió que cierto memorando advirtiendo al destinatario sobre la necesidad de una autorización para realizar una actividad particular, no podía ser considerado como una "acción administrativa final".

Ello, a su vez, es cónsono con la finalidad del requisito de madurez empleado por los tribunales como producto de la exigencia constitucional de justiciabilidad y como consecuencia de la prohibición de que se emitan opiniones consultivas.[3] Véase Romero v. E.L.A., res. 10 de noviembre de 2006, 2006 TSPR 163; Ortiz v. Panel del F.E.I., res. 8 de octubre de 2001, 2001 TSPR 134. Como se sabe, mediante dicha doctrina se examina la proximidad temporal o inminencia del daño alegado a través de un análisis dual: si la controversia sustantiva es apropiada para resolución judicial y si el daño es suficiente para requerir adjudicación. Al igual que con los requisitos expresamente establecidos en la L.P.A.U., con su aplicación los tribunales buscan proteger a las agencias y evitan interferir con sus dictámenes hasta que adquieran finalidad y sus efectos se puedan sentir de forma concreta sobre las partes. Véase Abbot Laboratories, 387 U.S. 136 (1967); Asoc. de Guardias Penales v. Secretario, 87 D.P.R. 711 (1973).[4]

---

[3] Según se conoce, la doctrina de opinión consultiva intenta evitar que se produzcan decisiones en el abstracto, o bajo hipótesis de índole especulativa ya que no es función de los tribunales actuar como asesores o consejeros. Com. de la Mujer v. Secretario, 109 D.P.R. 715 (1980).

[4] Precisamente, a la luz de la doctrina de madurez, en Asoc. Guardias Penales v. Secretario, supra, nos negamos a revisar una actuación administrativa que no tenía efectos directos sobre las partes porque el reglamento que alegadamente les afectaba se encontraba aún en etapa de propuesta. De forma similar, en Meléndez de París v. Depto. de Servicios Sociales, 107 D.P.R. 690 (1978), resolvimos que era prematuro el recurso de revisión presentado por un ciudadano a quien se le había notificado una deuda por concepto de un pago indebido de cupones de alimentos. En

En fin, de lo anterior se colige que –en consideración a nociones básicas de justiciabilidad– mediante la aprobación de la L.P.A.U., la Asamblea Legislativa limitó la revisión judicial exclusivamente a las órdenes finales de las agencias. Es decir, nuestro sistema de derecho administrativo sujeta la aplicación de dicho recurso a la existencia de una actuación agencial final que adjudique derechos u obligaciones de las partes.[5]

Con esto en mente, debemos resolver si el foro apelativo tenía jurisdicción para examinar –mediante el recurso de revisión judicial– la corrección de la Opinión emitida en este caso por la Oficina de Ética Gubernamental. Claro está, llegar a una conclusión a esos efectos requiere, a su vez, una determinación sobre la naturaleza misma de la referida Opinión.

**III**

La Opinión objeto de análisis fue emitida por la Oficina de Ética Gubernamental en respuesta a una comunicación del señor Crespo Claudio mediante la cual éste le solicitaba a la agencia una expresión en torno a la aplicabilidad de las

---

vista de que en esa etapa no se sabía si la agencia le condonaría la deuda, determinamos que la controversia no estaba debidamente trabada y que, por tanto, era improcedente la intervención del tribunal.

[5] No obstante, esto no implica que no existan excepciones a esta norma general. A tales efectos, hemos dicho que aunque la doctrina de "orden y resolución final" es distinguible de la de "agotamiento de remedios administrativos", ambas tienen un alcance análogo y, por tanto, de ordinario, tienen las mismas excepciones. Véase Junta Exam. de Tecnólogos Médicos *supra*.

disposiciones de la Ley de Ética Gubernamental, *supra*, a los funcionarios de AEELA y, en particular, sobre la alegada obligación de rendir informes financieros. La agencia consideró la comunicación como una **"consulta"**, por lo que se dispuso a **"opinar"** en cuanto a ésta.

Antes de pronunciar su respuesta, la Oficina de Ética Gubernamental hizo un estudio abarcador de su ley orgánica y del estatuto mediante el cual AEELA quedó sujeta a sus poderes de fiscalización y supervisión. Tras el correspondiente análisis, concluyó que los funcionarios de AEELA están cobijados por las disposiciones de la Ley de Ética Gubernamental, *supra*, y que tanto el señor Crespo Claudio como los miembros de la Junta de Directores y demás directores de oficinas y departamentos están obligados a rendir los informes financieros.

En la referida Opinión, la Oficina de Ética Gubernamental también aclaró que lo expresado estaba basado estrictamente en los hechos particulares evaluados. A su vez, aseveró que lo expresado constituye la posición formal de la agencia y que, de haberse omitido información pertinente, o en caso de que surgieran nuevos hechos relevantes, la Opinión carecería de validez. Finalmente, en la Opinión aludida la Oficina de Ética Gubernamental manifestó su deseo de que la información provista pueda ser de utilidad e instó al destinatario a comunicarse en caso de tener alguna interrogante sobre el asunto.

Un examen ponderado de la Opinión aludida nos convence de que la misma no fue producto de un proceso de adjudicación ante la agencia administrativa. Debemos recordar que la L.P.A.U. define adjudicación como el proceso mediante el cual se determinan los derechos, obligaciones o privilegios de las partes. Sin duda, la Opinión emitida en este caso por la Oficina de Ética Gubernamental no tiene ese efecto toda vez que, mediante la misma, la agencia se limitó a realizar una interpretación de su ley orgánica y de la ley que alegadamente sujetó a AEELA a sus poderes de supervisión y fiscalización.

En dicha expresión administrativa la Oficina de Ética Gubernamental se circunscribió a clarificar los derechos y obligaciones previamente establecidos en la ley. Aunque parece afirmar lo contrario, la agencia hizo su interpretación de derecho sin aplicar la normativa correspondiente a unos hechos particulares. Incluso, de la Opinión surge que ésta no empleó un análisis particularizado de los puestos que, según el señor Crespo Claudio, debían estar exentos de la obligación de presentar los informes financieros. En su lugar, dispuso que "[p]ara determinar si un Director de Oficina o Departamento, o cualquier otro empleado de AEELA debe rendir un informe financiero, será necesario que nuestra Oficina **evalúe cada caso** a la luz de las siguientes disposiciones del Artículo 4.1(a) de la Ley de Ética Gubernamental…" (énfasis nuestro).

Ciertamente, lo anterior demuestra que la Oficina de Ética Gubernamental no evaluó la controversia a base de unos hechos específicos para resolver si, en determinado momento, los funcionarios de AEELA incumplieron con las normas relativas a los informes financieros. Y es que, no podía ser de otra forma, toda vez que –a pesar de sus alegaciones– el propio señor Crespo Claudio presentó el informe financiero correspondiente al año en cuestión.

Por tanto, no cabe duda que la Opinión emitida en este caso por la Oficina de Ética Gubernamental no cumple con lo necesario para ser considerada como una "orden o resolución". Además de que la misma no adjudica propiamente una controversia, también se encuentra desprovista de determinaciones de hecho y de conclusiones de derecho aplicadas a un cuadro fáctico particular. Si bien la Opinión advierte del derecho a solicitar revisión judicial ante el Tribunal de Apelaciones, lo cierto es que ello –por sí solo– no la convierte en una determinación de carácter adjudicativo. Véase, en términos similares, <u>Padilla Falú v. A.D.P.</u>, 155 D.P.R. 183 (2001); <u>Vázquez v. A.R.P.E.</u>, 128 D.P.R. 513 (1991).

Conforme a lo anterior, no podemos endosar la tesis de la Oficina de Ética Gubernamental a los efectos de que, si bien el proceso mediante el cual se emitió la Opinión bajo análisis no cumplió con los requisitos de la adjudicación formal, el mismo puede ser considerado como un proceso de adjudicación informal. Además de que ya hemos concluido que

la Opinión en cuestión <u>no</u> constituye una determinación adjudicativa, la improcedencia de dicha alegación surge claramente de las propias disposiciones de la L.P.A.U. y de la ley orgánica de la agencia.

Nótese que, por un lado, el proceso que nos ocupa no está incluido en el listado de procedimientos informales mencionados en la sección 3.1 de la L.P.A.U.[6] los cuales, por su naturaleza, están exentos de los requisitos establecidos para la adjudicación formal de controversias; a saber, (1) notificación oportuna de los cargos, (2) derecho a presentar evidencia, (3) derecho a una adjudicación imparcial y (4) derecho a que la decisión esté basada en el expediente. 3 L.P.R.A. sec. 2151(a).

Además, la Ley de Ética Gubernamental, *supra*, tampoco le confiere naturaleza de procedimiento adjudicativo informal al proceso mediante el cual se emitió la Opinión que nos ocupa. Dicha Opinión fue emitida por la Oficina de Ética Gubernamental en virtud del artículo 2.4 del referido estatuto, el cual le confiere <u>autoridad</u> **para establecer un servicio de opiniones** sobre los asuntos de su incumbencia. En particular, el mencionado artículo dispone, en lo pertinente, lo siguiente:

---

[6] Tales procesos son los siguientes: (1) adjudicación de subastas, (2) concesión de préstamos, (3) becas, (4) subsidios, (5) subvenciones, (6) emisiones de deuda, (7) inversiones de capital, (8) reconocimientos o premios y (9) todos los trámites o etapas del proceso de evaluación de documentos ambientales requeridos por la "Ley sobre Política Pública Ambiental" y el Reglamento aprobado al amparo de ésta. 3 L.P.R.A. sec. 2151(a).

El Director [de la Oficina de Ética Gubernamental] tendrá los siguientes deberes y poderes:
…
(n) Establecer un servicio de opiniones emitidas sobre los asuntos de su incumbencia que sean de aplicación general o sobre asuntos específicos que se le consulten. Las opiniones del Director deberán ser recopiladas, publicadas y estar disponibles tanto para los organismos de gobierno así como para el público en general. 3 L.P.R.A. sec. 1814(n).

De conformidad con la autoridad legislativa así conferida, la Oficina de Ética Gubernamental promulgó el Reglamento de Opiniones y Consultas de la Ley de Ética Gubernamental, *supra*. El propósito del referido cuerpo reglamentario no es otro que viabilizar que el Director Ejecutivo pueda cumplir con su "deber de interpretar, aplicar y hacer cumplir las disposiciones de la Ley de Ética Gubernamental y sus Reglamentos". Igualmente, mediante el mismo se procura que dicho funcionario cumpla con la obligación de proveer **información y promover la difusión, comprensión y educación de las normas éticas** contenidas en la Ley de Ética Gubernamental, *supra*. Véase Art. II, Reglamento de Opiniones y Consultas de la Ley de Ética Gubernamental, *supra*.

Tal como se desprende de la disposición transcrita de la Ley de Ética Gubernamental, *supra*, y de las particularidades del Reglamento de Opiniones y Consultas, *supra*, el proceso mediante el cual la Oficina de Ética Gubernamental emitió la Opinión OPC-04-002 constituye un **mecanismo de consultas** disponible para que la agencia eduque sobre las normas éticas

contenidas en la Ley de Ética Gubernamental, *supra*. Dicho mecanismo de consulta representa un vehículo **informativo** mediante el cual la Oficina de Ética Gubernamental, previa solicitud, orienta a las personas sujetas a su jurisdicción sobre asuntos específicos o generales que se le consulten. El mismo constituye meramente un mecanismo adicional que tiene la agencia disponible para hacer constar su interpretación de la ley habilitadora.[7]

Tratándose de una expresión de esa índole, no cabe duda que la Opinión en cuestión constituye, más bien, una interpretación oficial de la Oficina de Ética Gubernamental con respecto al alcance de su ley habilitadora. La L.P.A.U. define dicho concepto, precisamente, como una interpretación formal de la agencia sobre la ley que está bajo su administración, que se expide a solicitud de parte o a iniciativa propia y que se hace formar parte del repertorio formal de interpretaciones de la agencia. 3 L.P.R.A. sec. 2101(d).[8] Ciertamente, la Opinión bajo análisis cumple con cada uno de esos criterios.

Por un lado, la interpretación realizada por la agencia sobre su ley orgánica surgió en esta ocasión a solicitud de

---

[7] Si bien para hacer su interpretación de la ley la agencia podía usar otros formatos como boletines, manuales o cartas, en esta ocasión optó por el mecanismo de la "opinión".

[8] Aunque este concepto no se emplea de forma literal en el resto de la L.P.A.U., lo cierto es que la sección 1.6 del estatuto dispone que las agencias deben tener disponible para reproducción, a solicitud de persona interesada, las interpretaciones así adoptadas con relación a las leyes que administran. Véase 3 L.P.R.A. sec. 2105(d).

parte. A su vez, según el texto de la Opinión, la interpretación allí expresada constituye la posición formal y oficial de la agencia. Finalmente, a tenor con lo dispuesto en el mencionado artículo 2.4 de la Ley de Ética Gubernamental, *supra*, dicha Opinión debe ser recopilada y publicada para beneficio de la persona que solicitó la consulta y para el público en general.[9]

Aunque, tal como sostiene el profesor Fernández Quiñones, las "interpretaciones oficiales" podrían ser equivalentes a las reglas interpretativas[10], las mismas indudablemente constituyen un mecanismo adicional para que las agencias hagan constar su posición formal sobre las leyes

_____

[9] Aún en el caso de que la agencia no haya cumplido con el deber de publicar dicha Opinión, coincidimos con el profesor Fernández Quiñones cuando aduce que el cumplimiento con el criterio de "formar parte del repertorio formal de interpretaciones de la agencia" se puede lograr con algún acto positivo de la agencia para que la interpretación adquiera ese rango. Véase D. Fernández Quiñones, <u>Derecho Administrativo</u>, Ed. Forum, 2da. Ed. Colombia, 2001, pág. 27. Sin duda, en este caso la agencia hizo lo propio al hacer constar que la interpretación allí consignada era la posición oficial de la agencia y al expresar, incluso, que por medio de esa Opinión quedaba derogada parte de otra (OPC-97-366).

[10] Véase D. Fernández Quiñones, *supra*, pág. 26. Conviene señalar que las reglas interpretativas suelen ser directrices u otras reglamentaciones menos formales que la agencia aprueba para darle uniformidad a sus propios procesos, para pautar la discreción administrativa o para otros fines internos. <u>Hernández v. Colegio de Optómetras</u>, res. 24 de junio de 2002, 2002 TSPR 85. Dado que no se consideran dentro de la definición de regla o reglamento, este tipo de directriz está exenta del proceso de reglamentación formal establecido en la L.P.A.U. Véase 3 L.P.R.A. sec. 2102(l) y 2127. Se han considerado reglas interpretativas, por ejemplo, ciertos documentos, manuales y boletines adoptados por las agencias para guiar a su personal y al público en general a la hora de interpretar la ley. D. Fernández Quiñones, *supra*, pág. 26.

y reglamentos que administran. De hecho, se ha reconocido que las agencias emplean variedad de mecanismos para aclarar e interpretar dichos preceptos. "Los formatos potenciales incluyen reglas legislativas, adjudicaciones, reglas interpretativas, declaraciones de política pública, manuales, guías, instrucciones de personal, **opiniones** y teorías legales" (traducción nuestra y énfasis suplido). Pierce, Administrative Law Treatise, Aspen Law and Business, New York, Vol., 2002, pág. 151. Conforme a ello, no cabe duda que para lograr su cometido de clarificar las leyes en controversia la Oficina de Ética Gubernamental podía emplear el mecanismo de la opinión, el cual -de hecho- no es ajeno a nuestro sistema de derecho administrativo.

De todas maneras, dado que la expresión realizada en este caso por la Oficina de Ética Gubernamental mediante el formato de opinión no cumple con lo necesario para ser considerada una "orden o resolución final" proveniente de un proceso propiamente adjudicativo, la misma no es revisable mediante el recurso de revisión judicial. Siendo así, resulta forzoso concluir que el Tribunal de Apelaciones no tenía jurisdicción para revisar mediante dicho recurso la Opinión emitida en este caso por la Oficina de Ética Gubernamental. Debemos recordar que los tribunales no tienen discreción para asumir jurisdicción donde no la hay. Souffront Cordero v. AAA, res. 21 de abril de 2005, 2005 TSPR 49; Padilla Falú v. A.D.V., *supra*. Por tanto, procedía que el foro apelativo se declarara sin jurisdicción para examinar

mediante el recurso de revisión judicial la Opinión OPC-04-002 emitida por la Oficina de Ética Gubernamental.

Dado que el planteamiento jurisdiccional presentado por el peticionario dispone del caso en su totalidad, no es necesario considerar el restante señalamiento.[11]

**IV**

Por los fundamentos que anteceden, resolvemos que el Tribunal de Apelaciones erró al asumir jurisdicción sobre el recurso de revisión judicial presentado por el señor Crespo Claudio. En consecuencia, se revoca la sentencia recurrida.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

---

[11] Tampoco habremos de expresarnos en torno a la procedencia del recurso de sentencia declaratoria para revisar la corrección de la Opinión emitida en este caso por la Oficina de Ética Gubernamental. Dado que esa no es la controversia que nos ocupa, y toda vez que existe un proceso pendiente ante el Tribunal de Primera Instancia dirigido a dilucidar tal cosa, no nos corresponde en esta ocasión pasar juicio sobre ello.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Pablo Crespo Claudio,
Director Ejecutivo de la
Asociación de Empleados del
E.L.A. de P.R., etc.

    Peticionarios

                                CC-2007-622       Certiorari

       v.

Oficina de Ética Gubernamental

    Recurrida


SENTENCIA


San Juan, Puerto Rico, a 16 de mayo de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se resuelve que el Tribunal de Apelaciones erró al asumir jurisdicción sobre el recurso de revisión judicial presentado por el señor Crespo Claudio. En consecuencia, se revoca la sentencia recurrida.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                       Aida I. Oquendo Graulau
                 Secretaria del Tribunal Supremo